UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLORENCE JOHNSON-FRANKLIN,

    Plaintiff,

                                         Case No. 21-cv-10663
v.                               Hon. Matthew F. Leitman

WALMART, INC.,

    Defendant.

_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (ECF No. 19) AND TERMINATING DEFENDANT'S
MOTION IN LIMINE (ECF No. 30) AS MOOT</u>**

In 2020, Plaintiff Florence Johnson-Franklin slipped and fell while she was shopping in a Walmart Supercenter. (*See* Compl., ECF No. 1, PageID.15.) Johnson-Franklin claims that as a result of the fall, she "suffered severe and permanent injuries" to her ankle and back. (*Id.*, PageID.3, 16.) In this civil action, Johnson-Franklin brings claims of negligence and premises liability against Walmart, Inc. ("Walmart"). (*Id.*, PageID.16-18.)

There are two motions now pending before the Court: Walmart's Motion for Summary Judgment (ECF No. 19) and Walmart's Motion in Limine (ECF No. 30). For the reasons explained below, Walmart's Motion for Summary Judgment (ECF No. 19) is **GRANTED**, and Walmart's Motion in Limine (ECF No. 30) is

1

**TERMINATED AS MOOT**. Johnson-Franklin's claims against Walmart in this action are **DISMISSED**.

I

A

On May 23, 2020, Johnson-Franklin and her husband were shopping at a Walmart store in Dearborn, Michigan. During her time in the store, Johnson-Franklin visited the produce aisle twice. Her first visit to that aisle was unremarkable. When she returned to the aisle for the second time, however, she slipped and fell on the floor. (*See* Johnson Dep., ECF No. 26-6, PageID.336.) She did not see anything on the floor before she fell. (*Id.*, PageID.337.) After her fall, she felt that the floor was wet and noticed a clear liquid underneath her hand. (*See id.*, PageID.345-350.) She presumed that liquid to be water. (*See id.*) She does not have any personal knowledge as to (1) how the water got on the floor of the produce aisle or (2) how long that floor had been wet before her fall. (*See id.*, PageID.344.)

As a result of her fall, Johnson-Franklin injured her ankle and back. (*See id.*, PageID.353.) She was transported to Henry Ford Hospital in Dearborn for treatment. (*See id.*) She was discharged about three hours later. (*See id.*, PageID.359.)

**B**

There is a video recording of Johnson-Franklin's fall (*see* Dkt. Entry 12/13/2022), but it does not shed much, if any, light on how the water ended up on the floor of the produce aisle. The video was captured by Walmart's in-store recording system. It is grainy, of poor quality, and appears to have been recorded by a camera set a fair distance away from the spot in the produce aisle where Johnson-Franklin slipped and fell (the "Site of the Fall").

The video depicts the layout of the produce aisle. Along the side of the aisle closest to the camera are shelves of produce. There is a black rubber mat in front of a small portion of the shelving. The shelves adjacent to the mat hold produce that is periodically misted with water emitted from sprayers mounted on the shelves. Those shelves display wet produce (the "Wet Produce Display"). The other shelves in the produce aisle that are not adjacent to the black rubber mat display dry produce that is not misted or sprayed (the "Dry Produce Display"). The diagram below depicts the shelving along the produce aisle, the rubber mat, and the Site of the Fall.



The video footage includes a clock that offers helpful time-stamps for the events in the video. The relevant sequence of the video begins around 3:48:56 PM. At that time, a person who appears to be a Walmart employee emerges from an area at the far end of the produce aisle – the end that appears at the top of the video footage and is depicted at the top of the diagram above. The employee is wearing gloves and a mask, and he appears to be carrying a container of produce in his hands. The video does not show what type of produce is in the container, nor does the video reveal whether the produce in the container is wet, dripping, or moist.

4

Around 3:49:11 PM, the Walmart employee stops to speak with an unidentified customer near the Site of the Fall. The employee converses with the customer near the Site of the Fall for approximately one minute and thirty seconds. The employee appears to hold the container with the unknown produce in his hands for the duration of the conversation. The video does not depict any moisture dripping from the container.

Around 3:50:44 PM, the employee ends his conversation with the customer and walks away from the Site of the Fall. He heads toward the black mat and the Wet Produce Display. Shortly thereafter, the customer with whom he was speaking also walks away. The customer heads in the opposite direction. Neither the employee nor the customer slips or slides as they walk over (or very close to) the Site of the Fall.

Around 3:50:50 PM, the employee stops near the black mat and appears to unload the produce from the container onto the Wet Produce Display. He finishes unloading the produce around 3:51:38 PM.

Around 3:51:42 PM, the employee again walks over (or very close to) the Site of the Fall. Once again, he does not slip or fall. Immediately after the employee passes over the Site of the Fall, a second unidentified customer walks to (or very close to) the Site of the Fall. The unidentified customer remains around the Site of the Fall for about forty seconds. That customer does not slip or fall.

5

Around 3:52:35 PM, Johnson-Franklin approaches the Site of the Fall for the first time. She remains at (or very close to) the Site of the Fall for about twenty seconds before walking back to her shopping cart. She does not slip or fall during this first trip to the Site of the Fall.

Around 3:53:08 PM, immediately after Johnson-Franklin leaves the Site of the Fall for the first time, a third unidentified customer approaches the Site of the Fall (or at least very close to the Site of the Fall). The third unidentified customer does not slip or fall.

Around 3:53:13 PM, Johnson-Franklin returns to the Site of the Fall for the second time with her husband and her shopping cart. At 3:53:18 PM, she slips and falls onto the ground.

### C

Johnson-Franklin filed this action in the Wayne County Circuit Court on February 17, 2021. (*See* Compl., ECF No. 1, PageID.14.) Johnson-Franklin's Complaint asserts two counts against Walmart: Negligence and Premises Liability. (*See* Compl., ECF No. 1, PageID.16-18.)

Walmart removed the case to this Court on March 25, 2021. (*See* Notice of Removal, ECF No. 1, PageID.1.) In its Notice of Removal, Walmart explained that the Court has diversity jurisdiction over this action under 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds

$75,000. (*See id.*) Walmart filed an Answer with Affirmative Defenses on April 15, 2021. (*See* Answer, ECF No. 5).

On October 31, 2022, Walmart filed a Motion for Summary Judgment. (*See* Mot., ECF No. 19). In that motion, Walmart argues that it is entitled to judgment as a matter of law because Johnson-Franklin has not presented any evidence that Walmart breached the duty of care it owed to her. Johnson-Franklin filed her Response to Walmart's motion on November 21, 2022. (*See* Resp., ECF No. 21.) Johnson-Franklin contends that the video footage described above creates a genuine dispute of material fact as to whether Walmart created the danger that led to her fall. (*See id.*, PageID.219-220). Walmart filed a Reply on December 2, 2022. (*See* Reply, ECF No. 22.)

Walmart also filed a Motion in Limine on December 22, 2022. (*See* Mot., ECF No. 30.) In that motion, Walmart moves the Court to preclude Johnson-Franklin from introducing any evidence of Walmart's maintenance policies or procedures. (*See id.*, PageID.571.) Franklin-Johnson filed a Response to the Motion in Limine on January 27, 2023. (*See* Resp., ECF No. 31.)

The Court held a hearing on the two motions on April 25, 2023.

## II

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact."

7

*SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

### III

### A

As noted above, Johnson-Franklin asserts claims for ordinary negligence and premises liability against Walmart. However, at the hearing before the Court, Johnson-Franklin's counsel candidly – and properly – acknowledged that Johnson-Franklin's claim arises out of the allegedly-hazardous condition of the produce aisle and that Walmart's alleged negligence was limited to creating that condition. Under these circumstances, Johnson-Franklin's sole claim is for premises liability; she may not proceed with her claim for ordinary negligence. *See Pugno v. Blue Harvest Farms LLC*, 930 N.W.2d 393, 402 (Mich. App. 2018) (explaining that where a plaintiff's claim is based upon the allegedly-hazardous condition of the defendant's

land, the action "sounds in premises liability rather than ordinary negligence even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury.")

**B**

"Under Michigan law, which governs this diversity action, a Plaintiff asserting a premises liability claim must prove four elements: (1) that Defendant owed a duty to Plaintiff, (2) that Defendant breached that duty, (3) that Plaintiff suffered damages, and (4) that the breach was the cause of the damages suffered." *Drews v. Am. Airlines, Inc.*, 68 F. Supp. 3d 734, 739 (E.D. Mich. 2014). Here, it is undisputed that Walmart owed Johnson-Franklin a duty "to exercise reasonable care to protect [her] from an unreasonable risk of harm caused by a dangerous condition." *Id.* at 740. But the parties vigorously dispute whether Walmart breached that duty. To establish that Walmart breached its duty, Johnson Franklin must show that Walmart "(1) created the dangerous condition; (2) knew of the dangerous condition; or (3) should have known of the dangerous condition." *Id.* at 741. She has failed to make any of these three showings.

Johnson-Franklin's theory is that Walmart breached its duty by creating the dangerous condition that caused her fall.[1] More specifically, she contends that the

---

[1] Quite properly, Johnson-Franklin does not argue that the mere fact that she fell, standing alone, establishes that Walmart breached its duty of care. *See, e.g., Hulett v. Great Atlantic & Pacific Tea Co.*, 299 N.W. 807, 810 (Mich. 1941) ("The mere

9

Walmart employee who was carrying the container with the unidentified produce dripped water on the floor at the Site of the Fall and rendered that area slippery and unsafe. In her words, the video recording "clearly demonstrates that within a mere two (2) to four (4) minutes of [her] fall on May 23, 2020, Defendant's wet produce employee allowed wet produce to stand over the area of her fall, creating the conditions allowing the fall to occur." (Resp., ECF No. 21, PageID.212.)

But the video does not depict that. As noted above, the video recording does not reveal what produce the employee had in the container, nor does it show that the produce in the container was wet or moist. Moreover, no witness testified that the produce in the container was wet. Likewise, the video does not show any water or any other liquid dripping out of the container that the employee was holding, and no witness testified that that happened.

Johnson-Franklin's theory seems to be that the jury could reasonably infer that the Walmart employee had "wet produce" in his container because he eventually stocked the produce on the Wet Produce Display. She reasons that because the produce from the container was put out for display in a wet environment, it would

---

fact that one slips on an oiled floor and injures oneself does not establish actionable negligence. There must be evidence that the floor was improperly oiled so as to create a hazardous condition."); *Pollack v. Oak Office Bldg.*, 151 N.W.2d 353, 356 (Mich. Ct. App. 1967) (finding that evidence of slipperiness, standing alone, was insufficient to establish actionable negligence).

be reasonable to infer that the produce was stored in a wet condition and was therefore also wet before the employee placed it on the shelf.

That contention, however, rests upon mere speculation. Johnson-Franklin points to no evidence in the record that produce that is displayed on the Wet Produce Display is wet or moist *before* it is put out for display. Indeed, she has not identified any evidence in the record concerning the condition of any Walmart produce before it is placed out for display. Moreover, she has not cited any evidence in the record as to *why* Walmart displays certain produce in a wet environment. For instance, we do not know whether Walmart keeps produce on display wet because the produce will spoil without constant moisture or whether Walmart keeps produce on display wet because the moisture makes the produce more appealing to its customers. If the former is true, then it could perhaps be reasonable to infer that the produce that the employee transferred from the container onto the Wet Produce Display may have been wet as it sat in the container. If the latter is true, it would not be reasonable to draw any inferences as to whether the produce was wet as it sat in the container. But since we do not know which is true, we can only speculate.

Johnson-Franklin had ample opportunity during discovery to develop evidence that would shed light on the condition of the produce as it sat in the container, but she failed to do so. She is thus left with a theory that rests upon speculation. Such "speculation cannot create a question of fact" on a premises

liability claim. *Estate of Trueblood v. P & G Apartments*, 933 N.W.2d 732, 739 (Mich. App. 2019).

Even if Johnson-Franklin's theory as to how the water got on the floor had some support in the evidence, summary judgment would still be appropriate because Johnson-Franklin has not shown that her theory is any more plausible than other alternative theories. *See Skinner v. Square D Co.*, 516 N.W.2d 475, 480 (Mich. 1994) (explaining that it is not "sufficient [for a plaintiff] to submit a causation theory that, while factually supported, is, at best, just as possible as another theory.") For example, one such alternative theory is that the customer who walked through (or very close to) the Site of the Fall at 3:53:05 PM (after Johnson-Franklin's first visit to the Site of the Fall but before her second), dripped something onto the floor as she passed over the area. This competing theory is arguably *more* consistent with the evidence than Johnson-Franklin's theory. Indeed, it is difficult to reconcile Johnson-Franklin's theory that the Walmart employee created the slippery condition at the Site of the Fall with the fact that after the employee left the site, four people walked through or very close to it without slipping.[2] In contrast, the alternative theory – that water did not appear at the Site of the Fall until the third unidentified customer

---

[2] The four people are the Walmart employee himself, the customer with whom he was speaking, the second unidentified customer who walked through the area at 3:51:42 PM, and the third unidentified customer who walked through the area at around 3:53:08 PM, immediately after Johnson-Franklin's first visit to the produce aisle.

12

passed through at 3:53:08 PM – is logically consistent with the fact that nobody slipped at the Site of the Fall before that time. Because Johnson-Franklin's theory is, at best, no more plausible than the alternative theory, it falls short of creating a material factual dispute that must be resolved at trial. *See Shurtz v. U-Haul Co. of Michigan*, 2014 WL 631257, at *2 (Mich. Ct. App. Feb. 13, 2014) (citing *Skinner, supra* and affirming summary disposition against a plaintiff on a premises liability claim where the plaintiff's theory was "quite plausible, but ultimately not supported by evidence that necessarily implies an absence of other plausible theories.")

## IV

For the reasons explained above, Walmart's Motion for Summary Judgment (ECF No. 19) is **GRANTED**, and Johnson-Franklin's claims against Walmart are **DISMISSED**. Accordingly, Walmart's Motion in Limine (ECF No. 30) is **TERMINATED AS MOOT**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 30, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126